UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
---------------------------------------------------------

Michael Petrucelli

v.                                                                                          No. 1:09-AP-01070

Stephen D'Abrosca                                                            No. 1:09-BK-11638, Chapter 7

---------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff Michael Petrucelli (hereafter, "Petrucelli" or "Plaintiff"), through counsel and by and through his contemporaneously filed motion for summary judgment, and seeks judgment against Debtor, Stephen D'Abrosca (hereafter, "D'Abrosca" or "Debtor"), that the debt Debtor owes to Plaintiff is not dischargeable under 11 U.S.C. § 523(a).

### STANDARD OF REVIEW

Under Federal Rule of Bankruptcy Procedure 7056, a motion for summary judgment to have a debt declared non-dischargeable under 11 U.S.C. § 523(a) "is governed by the same standards applicable to motions under Fed. R. Civ. P. 56." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001). Under Rule 56, summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (*quoting* McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

Plaintiff contends that there are no material disputed facts because Debtor is collaterally estopped from denying them.

## PROCEDURAL HISTORY

Plaintiff filed suit against Debtor in New Hampshire in 2005. The case went to trial in January 2008, and the jury awarded Plaintiff a substantial judgment. See Ex. A, Verdict Form, Michael Petrucelli v. Stephen D'Abrosca, et al., Hillsborough Super. Ct. North, Dkt. No. 05-C-0601 (Jan. 29, 2008) (hereinafter, "Verdict Form").[1] The New Hampshire Supreme Court dismissed Debtor's appeal and the judgment became final in October 2008. See Ex. B, Order Dismissing Appeal, Stephen D'Abrosca v. Michael Petrucelli, N.H. Sup. Ct., Dkt. No. 2008-244 (Oct. 21, 2008) (hereinafter, "Order Dismissing Appeal"). Before Plaintiff could collect on his judgment, Debtor filed bankruptcy in Rhode Island. See Docket No. 09-BK-11638. Plaintiff now institutes this adversarial proceeding seeking a judgment of non-dischargeability of the debt flowing from the New Hampshire judgment.

Plaintiff's suit against Debtor also contained a malpractice against Thomas Tang of the law firm of Gibson & Behman, P.C. This claim arose from the same facts as Plaintiff's lawsuit against Debtor and alleged the same misconduct on the part of Debtor, the difference being that it sought to hold Tang and Gibson & Behman liable for failing to prevent Debtor's misconduct

---

[1] Pursuant to Bankruptcy Rule 9017, the Federal Rules of Evidence apply to this proceeding. 56 Assoc. v. Diorio, 381 B.R. 431, 439 (D.R.I. 2008). Under the Federal Rules of Evidence, certified public records may be admitted into evidence without a showing of authenticity. F.R.E. 902(4). Attached to Plaintiff's contemporaneously filed Statement of Undisputed Facts as exhibits are certified copies of the Superior Court jury verdict (Exhibit A); the New Hampshire Supreme Court order dismissing Debtor's appeal (Exhibit B); and the Writ and Addendum thereto (Exhibit C). Relevant portions of the trial transcript containing the complete jury instructions and Plaintiff's closing argument in the New Hampshire trial are attached as Exhibit D. Because this document is filed electronically, the original certified copies of the above-referenced exhibits will be sent to the Court by U.S. Mail.

2

from harming Plaintiff. The claim resulted in a monetary settlement, but judgment against Plaintiff was entered in the matter.

## FACTS

The facts relevant to this proceeding are taken from the January 2008 trial and final judgment against Debtor in New Hampshire state court. For the reasons set forth below, Debtor is collaterally estopped from denying these facts. Plaintiff will recite the facts of the New Hampshire trial, and then explain how those facts support the application of collateral estoppel.

1.      The New Hampshire Lawsuit Against Debtor

Federal courts must give state court judgments the same preclusive effect that the rendering court would give them. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996). In determining the preclusive effect of a state court judgment, a federal court applies the law of the jurisdiction whose courts issued the judgment. Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000). Because a New Hampshire court rendered the preclusive judgment in this case, New Hampshire preclusion law applies. In determining the preclusive effect of a prior litigation, "the pleadings and the record of the trial are competent and available to show what the material issues were." Copeland v. Reynolds, 164 A. 215, 216 (N.H. 1933); see also Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007) (examining plaintiff's amended complaint to determine issues in prior litigation).

Plaintiff filed suit against Debtor in New Hampshire Superior Court in 2005, alleging counts of breach of fiduciary duty, theft/conversion, negligence, negligent misrepresentation, and enhanced compensatory damages. See Ex. C, Addendum to Writ of Summons (hereinafter, "Writ") ¶¶ 45-59, 64-65. Plaintiff met Debtor through his sister, Lisa Petrucelli, whom Debtor was romantically involved with. Id. at ¶ 13. In 1999, Debtor convinced Plaintiff to go into the

automotive business with him.  Id. at ¶ 14.  Plaintiff and Debtor decided that they would own a car dealership together, known as Automotive Acquisitions, Inc., under an arrangement where Plaintiff supplied an unsecured loan of $750,000 to buy the dealership and organize a corporation, and Debtor invested no money of his own, took a 51% stake in the corporation, and managed the dealership without a salary.  Id. at ¶¶ 2, 14, 19, 21.  In addition to providing the financing, Plaintiff personally guaranteed the dealership floor plan.  Id. at ¶ 22.  Plaintiff and Debtor planned to operate the dealership at a profit for some period and then sell it, at which point Plaintiff's initial $750,000 investment would be repaid and Plaintiff and Debtor would split any remaining profits.  Id. at ¶¶ 19, 29.  Unfortunately, when Plaintiff and Debtor sold the dealership in 2003 Plaintiff found that, as a result of Debtor's misconduct, he was exposed to liability for debts, lawsuits, bounced checks, and missing cars.  Id. at ¶¶ 30, 32, 34, 36, 40, 41.

Plaintiff subsequently instituted suit against Debtor alleging that Debtor had breached his fiduciary duty of loyalty to Plaintiff as a shareholder in the dealership corporation.  Id. at ¶¶ 45-48.  The instances of breach of fiduciary duty are many.  As president of Automotive Acquisitions, Debtor paid himself a salary of $3,000 a week ($625,000 in total) even though he represented to Plaintiff that he was working without salary.  Id. at ¶ 23; Ex. D, Trial Tr. Vol. 5, at 68.  Debtor charged personal expenses on the dealership's corporate American Express card in excess of $100,000, failed to transfer to the dealership $74,000 in cash deposits he received personally, and secretly arranged for the dealership to pay the lease on a Mercedes Benz that was leased for the exclusive use of Debtor's wife, who was unaffiliated with the dealership.  Writ at ¶ 24; Ex. D, Trial Tr. Vol. 5, at 68.  Plaintiff's signature was forged on a document increasing the dealership's floor plan lending limit from $1.7 million to $3.7 million, and Plaintiff was not informed when Debtor's management submitted the forged document to the floor plan lender.

4

Writ at ¶¶ 26-27.  Plaintiff later faced a lawsuit for potentially more than $300,000 in damages relating to his guarantee of the floor plan.  Id. at ¶ 36; Ex. D, Trial Tr. Vol. 5, at 68.  Plaintiff and Debtor also never received the full payment due on a covenant not to compete provision contained in the contract with the buyers of the dealership because the buyers withheld payment after discovering financial irregularities.  Writ at ¶ 40; Ex. D, Trial Tr. Vol. 5, at 69.

Plaintiff presented evidence in support of the above allegations at trial.  At the close of evidence, the trial court instructed the jury on breach of fiduciary duty as follows:

> Mr. Petrucelli alleges that Mr. D'Abrosca intentionally violated the trust that Mr. Petrucelli placed in Mr. D'Abrosca by *self-dealing*, by taking funds of the dealership to which he was not entitled and/or by failing to inform Mr. Petrucelli of the true finances of the dealership.

Id. at 23 (emphasis supplied).  Plaintiff then presented a closing argument to the jury in which he itemized the damages flowing from Debtor's misconduct.  Id. at 68-72.  Debtor asked to be compensated for, *inter alia*, the loss of his initial $750,000 investment in the dealership, the $175,000 he lost on his personal guarantee of the dealership floor plan, the $625,000 in unauthorized salary Debtor paid himself, the $12,000 the dealership paid to lease a Mercedes for Debtor's wife, and $75,000 in covenant not to compete payments that the new owners of the dealership never made because the cars they were to receive disappeared on Debtor's watch.  Id. at 68-69.  In total, Plaintiff asked the jury for $1,657,960 in compensatory damages.  Id. at 69.  After receiving the above instructions from the trial court and hearing the parties' closing arguments, the jury found that Debtor "breached his fiduciary duty to Michael Petrucelli" and returned a verdict of $1,615,500 in damages and $500,000 in enhanced compensatory damages against Debtor.  See Ex. A, Verdict Form; Ex. D. Trial Tr. Vol. 5, at 32 ("You may award [enhanced compensatory] damages if you find that Mr. D'Abrosca's conduct was more probably than not wanton, malicious, or oppressive.").  The jury's findings following the trial court's

5

instructions are significant because it is "presume[d] that juries follow instructions." United States v. Griffin, 524 F.3d 71, 78 (1st Cir. 2008). A jury verdict has a broad preclusive effect on the facts proven at trial. See Thibault v. Lambert, 174 A. 46, 47 (N.H. 1934) ("[A] valid judgment for the plaintiff definitely and finally negatives every defence that might and should have been received against the action."). The jury verdict thus established that Plaintiff had proven that Debtor breached his fiduciary duty of loyalty, and negated all of Debtor's defenses to that claim.

Debtor appealed the verdict, but the New Hampshire Supreme Court dismissed his appeal with prejudice and the Superior Court judgment became final. See Ex. B, Order Dismissing Appeal. As a result of the final judgment that, *inter alia*, Debtor breached his fiduciary duty of loyalty to Plaintiff, Debtor is indebted to Plaintiff in the amount of $2,115,500.

2.    Application of Collateral Estoppel

The "doctrine of collateral estoppel bars a party to a prior action . . . from relitigating any issue or fact actually litigated and determined in the prior action." Stewart v. Bader, 907 A.2d 931, 937 (N.H. 2006). For collateral estoppel to apply the issue must be identical in each action, the first action must have resolved the issue finally and on the merits, and the party to be estopped must have been a party in the first action or been in privity with a party in the first action. Id. An "issue may be 'actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation." Stoehr v. Mohammed, 244 F.3d 206, 208 (1st Cir. 2001) (*internal citations omitted*). Collateral estoppel is applicable in bankruptcy proceedings to except debts from discharge. In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001).

6

The present case satisfies the requirements of collateral estoppel. At Debtor's trial, Plaintiff accused him of breach of the fiduciary duty of loyalty. See Ex. C, Writ at ¶ 46; Ex. D, Trial Tr. Vol. 5, at 23. In considering Debtor's liability on the fiduciary duty count, the parties actually litigated whether or not he engaged in self-dealing. See id.; Ex. A, Verdict Form (Debtor "breached his fiduciary duty to Michael Petrucelli"); Ex. D, Trial Tr. Vol. 5 at 23 (concerning intentional violation of trust by self-dealing). There is an identity of issues here because Plaintiff seeks to assert the New Hampshire jury's finding that Debtor breached the fiduciary duty of loyalty against Debtor in this proceeding.

The remaining elements of collateral estoppel are also present. In the New Hampshire action, it was Plaintiff Michael Petrucelli against Defendant Stephen D'Abrosca. See Ex. C, Writ. The parties are the same here. The judgment against Debtor was on the merits because it resulted from a jury verdict on liability. See Ex. A, Verdict Form. The judgment is final because Debtor exhausted his appeals in the New Hampshire courts. See Ex. B, Order Dismissing Appeal. Therefore, collateral estoppel applies and Debtor is precluded from relitigating whether he breached his duty of loyalty to Plaintiff.

## LEGAL ARGUMENT

By seeking discharge of his debts through Chapter 7 bankruptcy, Debtor places "the rectitude of his prior dealings squarely in issue" because the Bankruptcy Act only grants discharge to the "honest but unfortunate debtor." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). Accordingly, 11 U.S.C. § 523 specifies certain types of debt that may not be discharged in bankruptcy. Because Debtor's financial obligations in the present proceeding flow from the judgment against him for breach of the fiduciary duty of loyalty, § 523 will not allow the discharge of his debts.

7

    <u>1.</u>    <u>The Debt is Not Dischargeable Under § 523(a)(4)</u>

Under 11 U.S.C. § 523(a)(4), a Chapter 7 bankruptcy discharge "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity." Plaintiff asserts that Debtor engaged in defalcation, and his debt to Plaintiff is therefore ineligible for discharge.

"Defalcation may be presumed from breach of the duty of loyalty." <u>In re Baylis</u>, 313 F.3d 9, 20 (1st Cir. 2002). In New Hampshire, when parties enter into a joint venture they are "like partners in a partnership," and therefore "owe a fiduciary duty to one another . . . [that] imposes an obligation of loyalty to the joint concern in all matters affecting the conduct of the venturer's business." <u>Miami Subs Corp. v. Murray Family Trust</u>, 703 A.2d 1366, 1373-74 (N.H. 1997). The duty of loyalty prohibits a fiduciary from putting his own interests above those to whom he owes a fiduciary duty. <u>See</u> <u>In re Baylis</u>, 313 F.3d at 20; <u>White v. Ransmeier & Spellman</u>, 950 F. Supp. 39, 42-43 (D.N.H. 1996); Ex. D, Trial Tr. Vol. 5 at 23 ("Mr. Petrucelli alleges that Mr. D'Abrosca intentionally violated the trust that Mr. Petrucelli placed in Mr. D'Abrosca *by self-dealing* . . .").

The facts established at Debtor's New Hampshire trial demonstrate that Debtor and Plaintiff were fiduciaries, and that Debtor breached his duty of loyalty to Plaintiff and thereby committed defalcation while acting in a fiduciary capacity. Plaintiff and Debtor entered a joint venture in the car dealership, thus creating a fiduciary relationship. <u>See</u> Ex. C, Writ ¶¶ 2, 14, 19, 21. Debtor paid himself $650,000 in salary without telling Plaintiff and used corporate assets for personal expenses. <u>See</u> <u>id.</u> at ¶¶ 23, 24; Ex. D, Trial Tr. Vol. 5, at 68. When Plaintiff and Debtor dissolved the joint venture, Plaintiff's initial investment had disappeared along with dozens of cars that Plaintiff had unknowingly guaranteed, and Plaintiff was the target of lawsuits arising

8

from the dealership's breached financing obligations. Writ at ¶¶ 26-27, 35, 36, 40, 41; Ex. D, Trial Tr. Vol. 5, at 68-69. Plaintiff sued Debtor for breach of the fiduciary duty of loyalty, Writ at ¶ 46, and the trial court specifically instructed the jury that breach of fiduciary duty required a finding of intentional self-dealing. Ex. D, Trial Tr. Vol. 5, at 23. The jury returned a verdict in Plaintiff's favor on this count, see Ex. A, Verdict Form, thus preclusively establishing the breach. Breach of the duty of loyalty is *per se* defalcation, In re Baylis, 313 F.3d at 20, and the judgment against Debtor arose from the trial in which breach was established. Debtor is collaterally estopped from denying the breach for the reasons set forth above. Debtor thus committed defalcation while acting in a fiduciary capacity, and he is barred from discharging his debt to Plaintiff under § 523(a)(4).

    2.    Public Policy Supports Nondischarge

The public policies animating both collateral estoppel and the Bankruptcy Act favor non-dischargeability. In light of "considerations of judicial economy and a policy of certainty and finality in our legal system," collateral estoppel has "been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." Stewart, 907 A.2d at 937 (*internal citations and quotations omitted*). Such considerations weigh heavily in this case. Plaintiff has pursued his debts against Debtor through trial and appeal. Debtor has had his day in court. He has had the benefit of the resources of the New Hampshire state courts and the time of the New Hampshire citizens who served on his jury. It was Debtor's right to call on these resources to contest his innocence, but now that he has exhausted them, the policies of judicial economy and finality of judgments incipient in the doctrine of collateral estoppel command that he be prohibited from expending Rhode Island judicial resources to contest an already final judgment.

9

It would also be against public policy to allow Debtor to hide from his obligations in Chapter 7 bankruptcy. The purpose of the Bankruptcy Act has long been understood to be to "relieve the *honest debtor* from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. U.S. Fid. & Guar. Co., 236 U.S. 549, 554-55 (1915) (emphasis supplied). The Act was not intended to be converted "into a shield for the protection of dishonest bankrupts." In re Goldman, 62 F.2d 421, 425 (1st Cir. 1932). In order to prevent dishonest debtors from ducking their obligations, § 523 of the Bankruptcy Act enumerates several types of debts that are not subject to discharge, including debts arising from defalcation. The Debtor now before the Court is not merely a business man reeling from a string of bad luck. He was found to be a fraud and cheat, and now, with a significant New Hampshire judgment against him, he has retreated to the bankruptcy courts of a different state in an attempt to avoid his lawful obligations. To allow Debtor here to "seek refuge in the comfortable confines of the bankruptcy courts," In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 76 (1st Cir. 1995), would be to run counter to the policies the Bankruptcy Act was intended to codify.

## CONCLUSION

The Court should grant summary judgment in Plaintiff's favor for the forgoing reasons.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
----------------------------------------------------------

Michael Petrucelli

v.                          No. 1:09-AP-01070

Stephen D'Abrosca            No. 1:09-BK-11638, Chapter 7

----------------------------------------------------------

                              Respectfully submitted,
                              Michael Petrucelli,
                              By his counsel,

Dated: November 16, 2009       /s/Andru H. Volinsky
                              Andru H. Volinsky, N.H. Bar #2634
                              Bernstein Shur, P.A.
                              P.O. Box 1120
                              Manchester, NH 03105-1120
                              Phone: 603.623.8700
                              Fax: 603.623.7775
                              avolinsky@bernsteinshur.com

                              Motley Rice,
                              Serving as Local Counsel

                              /s/ Motley Rice
                              John McConnell (RI #3016)
                              321 South Main Street
                              P.O. Box 6067
                              Providence, RI 02940
                              Phone: 401.456.7700
                              Fax 401.457.7708
                              jmmcconnell@motleyrice.com